```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                           EASTERN DIVISION
```

ALPHA HOLLOWAY,                     )
                                    )
            Plaintiff,               )
                                    )
      v.                             )        No. 4:07 CV 218 DDN
                                    )
AMERISTAR CASINO ST. CHARLES,        )
INC., MISSOURI GAMING                )
COMMISSION, JAMES A. BENNETT,        )
MERCILE BEHM, and THOMAS BENTON,     )
                                    )
            Defendants.              )

## MEMORANDUM AND ORDER

This action is before the court on the motions of defendant Missouri Gaming Commission (Doc. 9), defendant James A. Bennett (Doc. 19), and defendants Ameristar Casino St. Charles, Inc., Thomas Benton, and Mercile Behm (Doc. 17) to dismiss the complaint against them.[1] The parties have consented to the authority of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 21.) A hearing was held on May 7, 2007.

## I. BACKGROUND

Plaintiff Alpha Holloway brought this action against defendants Ameristar Casino St. Charles, Inc. (Ameristar), Missouri Gaming Commission, James A. Bennett, Mercile Behm, and Thomas Benton, following her arrest on November 22, 2002, while she was on the Ameristar Casino property. The arrest was in response to an alleged fight between the plaintiff and two other individuals. A criminal information was filed against Holloway in the Circuit Court of St. Charles County, though the prosecutor ultimately filed a memorandum of nolle prosequi and dismissed the criminal charges. Holloway alleges that she was subjected to physically abusive conduct and excessive force as part of the arrest. (Doc. 1.)

---

[1]In the alternative, defendants asked the court to abstain from acting in the case because of a related pending state court action. That relief has been mooted by the plaintiff's subsequent dismissal of the state court action.

Plaintiff invokes the subject matter jurisdiction granted to this court by 28 U.S.C. § 1343 (civil rights violations) and 1367 (supplemental jurisdiction).

Plaintiff's complaint alleges that Ameristar is a Missouri corporation with its principal place of business or corporate headquarters located in Nevada. Mercile Behm and Thomas Benton are Ameristar employees, each engaged in security operations for the casino. James Bennett is a state trooper employed by the Missouri State Highway Patrol and assigned to the Missouri Gaming Commission to monitor casino operations. (Doc. 1 at 2-3.)

Initially, Holloway filed suit against Ameristar in the Circuit Court of St. Charles County. The petition, filed on October 14, 2003, alleged claims of assault and battery, false arrest, and false imprisonment. (Doc. 17, Ex. B.) On February 22, 2004, Holloway filed an amended petition, adding Bennett as a defendant, and adding a claim for a conspiracy to violate her civil rights. (Doc. 17, Ex. C.) On July 18, 2004, Holloway filed a second amended petition, adding a claim for malicious prosecution and loss of consortium. (Doc. 17, Ex. D.) On April 30, 2007, Holloway voluntarily dismissed her state-court petition. (Doc. 28, Ex. 1.)

On January 26, 2007, Holloway filed the federal complaint now before this court, naming the five defendants listed above. Plaintiff alleges the following claims:

1. Count I asserts a claim for assault and battery against Ameristar.

2. Count II asserts a claim for assault and battery against Bennett.

3. Count III asserts a claim for false arrest and false imprisonment against Ameristar.

4. Count IV asserts a claim for false arrest and false imprisonment against Bennett.

5. Count V asserts a claim for malicious prosecution against Ameristar.

6. Count VI asserts a claim for malicious prosecution against Bennett.

7.  Count VII asserts a claim against defendant Ameristar for violation of plaintiff's civil rights based on the Fourth, Eighth, and Fourteenth Amendments, as well as 42 U.S.C. § 1983 and the laws and Constitution of the State of Missouri.

8.  Count VIII asserts a claim against defendant Missouri Gaming Commission for violation of plaintiff's civil rights based on the Fourth, Eighth, and Fourteenth Amendments, as well as 42 U.S.C. § 1983 and the laws and Constitution of the State of Missouri.

9.  Count IX asserts a claim against defendant Bennett for violation of plaintiff's civil rights based on the Fourth, Eighth, and Fourteenth Amendments, as well as 42 U.S.C. § 1983 and the laws and Constitution of the State of Missouri.

10. Count X asserts a claim against defendant Benton for violation of plaintiff's civil rights based on the Fourth, Eighth, and Fourteenth Amendments, as well as 42 U.S.C. § 1983 and the laws and Constitution of the State of Missouri.

11. Count XI asserts a claim against defendant Behm for violation of plaintiff's civil rights based on the Fourth, Eighth, and Fourteenth Amendments, as well as 42 U.S.C. § 1983 and the laws and Constitution of the State of Missouri.

Each count seeks compensatory and punitive damages, interest thereon, attorney's fees, and costs.

## II. DISCUSSION

Defendants have moved to dismiss the complaint for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint. Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993); Holden Farms, Inc. v. Hog Slat, Inc., 347 F.3d 1055, 1059 (8th Cir. 2003). The Supreme Court recently issued a new standard for evaluating motions to dismiss. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007) (overruling the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Despite overruling the Conley standard, the Supreme Court cautioned that it had not created a heightened pleading standard. Bell Atlantic, 127 S. Ct. at 1973 n.14, 1974.

Under Bell Atlantic, a complaint must include enough facts to state a claim for relief that is plausible on its face. Bell Atlantic, 127

S. Ct. at 1974. If the claims are merely conceivable - but not plausible - the court must dismiss the complaint. Id. To meet the plausibility standard, the complaint must contain "more than labels and conclusions." Id. at 1965. A complaint does not, however, need specific facts; a complaint only needs to "give the defendant fair notice of what the claim is and the grounds upon which it rests." Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007). The Federal Rules of Civil Procedure demand only that a complaint present a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). That said, the allegations must still be enough to "raise a right to relief above the speculative level." Bell Atlantic, 127 S. Ct. at 1965.

A complaint must be liberally construed in the light most favorable to the plaintiff. See Bell Atlantic, 127 S. Ct. at 1964-65. Moreover, a court must accept the facts alleged as true, even if doubtful. Id. at 1965. Thus, a well-pled complaint may proceed even if it appears the recovery is very remote or unlikely. Id. To warrant dismissal, the plaintiff's entitlement to relief must fall short of being plausible. Id. at 1973 n.14, 1974. The plaintiff must have failed to "nudge [the] claims across the line from conceivable to plausible." Id. at 1974.

## A. State Law Claims

### Counts I through VI

Counts I through VI allege claims under Missouri tort law. Defendants Ameristar and Bennett move to dismiss the counts for failing to bring suit within the applicable statutory limitations period. (Docs. 17, 20.) Alternatively, Ameristar moves the court to abstain in light of similar state court proceedings. (Id.) Holloway counters that the limitations period has not run for any of the counts. (Doc. 28.)

Claims for assault, battery, false imprisonment, and malicious prosecution must be brought within two years. Mo. Rev. Stat. § 516.140. False imprisonment is also referred to as false arrest, and the elements of each are the same. Highfill v. Hale, 186 S.W.3d 277, 280 (Mo. 2006).

A claim for false arrest must also be brought within two years. See Mo. Rev. Stat. § 516.140; see Highfill, 186 S.W.3d at 280.

On October 14, 2003, Holloway filed suit against Ameristar in the Circuit Court of St. Charles County, alleging claims of assault, battery, false imprisonment, and false arrest. On July 18, 2004, Holloway added a claim of malicious prosecution. Since the date of the alleged events occurred on November 22, 2002, the claims were filed within the applicable limitations period.

Holloway filed the federal complaint on January 26, 2007 - well after the relevant two-year limitations period. But under the Missouri Savings Statute, if a plaintiff has commenced an action within the appropriate period, and later suffers a nonsuit, the plaintiff may commence a new action within one year of the nonsuit. Mo. Rev. Stat. § 516.230; Trout v. Zakhour, 774 F. Supp. 1204, 1206 (E.D. Mo. 1991). The Missouri Savings Statute applies to any actions covered by sections 516.010 through 516.370 of the Missouri Revised Statutes. Mo. Rev. Stat. § 516.230; Trout, 774 F. Supp. at 1206. A voluntary dismissal without prejudice is one type of nonsuit. Kirby v. Gaub, 75 S.W.3d 916, 918 (Mo. Ct. App. 2002). The one-year nonsuit period begins when the voluntary dismissal is effective - on the filing date. Id.

On April 30, 2007, Holloway voluntarily dismissed her state court petition. Since the state court petition had been timely filed, Holloway had until April 30, 2008, to file a new action. The claims of assault, battery, false imprisonment, false arrest, and malicious prosecution are all covered by the Missouri Savings Statute. Mo. Rev. Stat. §§ 516.140, 516.230. Since Holloway filed her federal complaint well before the April 2008 deadline, these claims are timely filed.

Plaintiff's claims comport with Rule 12(b)(6). The complaint alleges Holloway was injured during the course of an unjustified arrest and detention. The unjustified arrest ultimately lead to the filing of a criminal information which was dismissed. The factual allegations set forth in the complaint, accepted as true, state plausible claims for relief. The motions of Ameristar and Bennett to dismiss Counts I through VI are therefore denied. Since Holloway dismissed her state court complaint, the arguments for abstention are denied as moot.

## B. Federal Law Claims

### Ameristar: Count VII

Count VII alleges Ameristar violated certain of plaintiff's federal constitutional rights and she invokes 42 U.S.C. § 1983 to address her allegations. Ameristar moves to dismiss the count because the plaintiff has failed to bring suit within the applicable statutory limitations period or because Ameristar is not a person within the meaning of § 1983. (Doc. 17.) Holloway counters that a corporation is a person within the meaning of the Civil Rights Act. (Doc. 28.)

There is no general federal statute of limitations applicable to claims brought under § 1983. Duisen v. Adm'r and Staff, Fulton State Hosp. No.1, Fulton, Mo., 332 F. Supp. 125, 127 (W.D. Mo. 1971). Instead, the federal courts borrow the applicable state statute of limitations for personal injury torts. Wallace v. Kato, 127 S. Ct. 1091, 1095 (2007). In Missouri, the relevant limitations period for general personal injury torts is five years. Mo. Rev. Stat. § 516.120(4). Accordingly, the applicable limitations period for claims brought under § 1983 is five years. Sulik v. Taney County, Mo., 393 F.3d 765, 767 (8th Cir. 2005). Holloway filed her federal complaint on January 26, 2007, alleging a violation of her civil rights that occurred on November 22, 2002. The civil rights claims are thus timely filed.

Section 1983 creates a cause of action for litigating alleged civil rights violations.[2] Crumpley-Patterson v. Trinity Lutheran Hosp., 388 F.3d 588, 590 (8th Cir. 2004). To state a claim for a § 1983 violation, a plaintiff must allege (1) the violation of a right secured by the Constitution and laws of the United States, and (2) that the alleged

---

[2] 42 U.S.C. § 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

deprivation was committed by a person acting under color of state law. Roe v. Humke, 128 F.3d 1213, 1215 (8th Cir. 1997).

"[U]nder color of state law" imposes the same requirements as the "state action" requirement of the Fourteenth Amendment. Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 929 (1982). As a general rule, § 1983 will not reach the conduct of private parties acting in their individual capacities. Lindsey v. Detroit Entm't, LLC, 484 F.3d 824, 827 (6th Cir. 2007); Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992) (noting that "[o]nly in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes.") Drawing a line between private and government conduct preserves individual freedoms, limits the reach of federal law, and insures that constitutional standards are invoked only when the state is responsible for the alleged conduct. Lindsey, 484 F.3d at 827.

As an initial matter, a private individual or corporation acting under color of state law may be sued under § 1983. See Lindsey, 484 F.3d at 827; see also Crumpley-Patterson, 388 F.3d at 590. In that sense, the cardinal question is not whether a corporation is a "person" under § 1983, but whether a corporation was acting under color of state law. See Lindsey, 484 F.3d at 827. A private party acts under color of state law where it is "a willful participant in joint activity with the State or its agents in denying a plaintiff's constitutional rights." Dossett v. First State Bank, 399 F.3d 940, 947 (8th Cir. 2005).

In Lindsey, several casino patrons sued the casino owner under § 1983 after they were detained by casino security officers. Lindsey, 484 F.3d at 825. In affirming the grant of summary judgment, the Sixth Circuit Court of Appeals found the plaintiffs could not prove that the casino and its employees were acting under color of state law for § 1983 purposes. Id. at 831. Private security officers, unlicensed by the state, do not act under color of state law. Id. at 830; see also Wade v. Byles, 83 F.3d 902, 906 (7th Cir. 1996) (holding that unlicensed private security guard was not acting under color of state law, even though the guard could carry a handgun, make arrests, and use deadly force in self-defense).

Private security officers, who are licensed by the state, can be considered state actors. Lindsey, 484 F.3d at 829. By licensing private security guards, the state takes a role in vetting the officers' qualifications, subjecting the officers to certain state statutes, and authorizing the private officers to make arrests. Id. The official grant of some elements of police power means a § 1983 suit can proceed against a company employing licensed private security guards. Id. at 831; see also Payton v. Rush-Presbyterian-St. Luke's Med. Ctr., 184 F.3d 623, 630 (7th Cir. 1999).

In Payton, the Seventh Circuit found that the City of Chicago had licensed a private security guard, subjecting the guard "to all the rules and regulations governing police officers of the city." Id. at 630. This grant of authority meant an employer's security guard could be acting under the color of state law and the plaintiff could survive the motion to dismiss. Id. at 630, 633. In Payton, the plaintiff's complaint specifically alleged that the hospital's security guards were "duly appointed and anointed . . . peace officers of the City of Chicago." Id. at 625-26.

Holloway's complaint in the case at bar does little more than allege the "labels and conclusions" discouraged by Bell Atlantic. The complaint states that Ameristar was "at all times acting under color of State law," but offers no support for that conclusion. There is no allegation that Ameristar acted in joint activity with any specific state actor. Missouri law provides for the licensing of private security guards by local governments. Mo. Rev. Stat. § 71.195. Yet, the complaint makes no reference to that provision. Unlike Payton, there is no allegation that the Ameristar security staff were licensed or appointed by local government. Even drawing all reasonable inferences from the complaint in Holloway's favor, the court concludes that plaintiff has not given Ameristar "fair notice of what the claim is and the grounds upon which it rests." See Erickson, 127 S. Ct. at 2200. The complaint does not include enough facts to state a claim that Ameristar acted under color of state law. Ameristar's motion to dismiss Count VII is granted in that the § 1983 claim against it will be

dismissed without prejudice to plaintiff amending her factual allegations.

## Missouri Gaming Commission: Count VIII

Count VIII alleges that the Missouri Gaming Commission violated the plaintiff's civil rights. The Gaming Commission moves to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim. In particular, the Gaming Commission argues that it is immune from suit under the Eleventh Amendment. (Doc. 9.) In response, Holloway asserts that the Gaming Commission is sufficiently independent and self-reliant to preclude immunity. (Doc. 13.) A motion to dismiss for lack of subject matter jurisdiction is subject to the same standard as a motion to dismiss under Rule 12(b)(6). Mattes v. ABC Plastics, Inc., 323 F.3d 695, 698 (8th Cir. 2003).

The Eleventh Amendment prevents a citizen from suing a state in federal court for monetary relief. Barnes v. Missouri, 960 F.2d 63, 64 (8th Cir. 1992). The protections of the Eleventh Amendment extend to state agencies and state officials in certain instances. Hadley v. N. Ark. Cmty. Technical Coll., 76 F.3d 1437, 1438 (8th Cir. 1996). Immunity extends to a state agency where a judgment against the agency would have the same practical effect as a judgment against the state itself. Id. Indeed, the impetus for the Eleventh Amendment was the prevention of federal court judgments being paid out of a state's treasury. Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30, 48 (1994). A court also considers the degree of control exercised by a state over an agency when deciding an Eleventh Amendment issue. Id.

The Eleventh Amendment is subject to only two established exceptions. Barnes, 960 F.2d at 64. When Congress has clearly and unmistakably abolished immunity, a suit against the state for monetary relief can proceed in federal court. Id. Second, a state may be sued if it has waived its immunity to a federal suit. Id. at 65. The state's waiver must be by express language or by overwhelming implication. Id.

The Missouri Gaming Commission is a Missouri state agency. Its five members are appointed by the Governor with the advice and consent

of the Missouri Senate. Mo. Rev. Stat. § 313.004.1. The Governor also reserves the authority to remove any member of the commission from office for malfeasance or neglect of duty. Id. at § 313.004.2. State law defines the duties and responsibilities of the Gaming Commission. Id. at § 313.004. Finally, all "moneys deposited into the gaming commission fund shall be considered state funds." Mo. Rev. Stat. § 313.835.1. Taken together, these factors indicate that the protections of the Eleventh Amendment extend to the Missouri Gaming Commission. See Brandt v. City of La Grange, Mo., No. 2:06 CV 1 JCH, 2006 WL 2120383 (E.D. Mo. July 27, 2006). The Missouri Gaming Commission's motion to dismiss Count VIII is granted.

### James Bennett: Count IX

Count IX alleges defendant Bennett violated plaintiff's federal civil rights. Bennett also invokes immunity under the Eleventh Amendment, because Holloway failed to allege Bennett was personally involved in the offending conduct, and because Holloway failed to allege any specific custom or policy which violated her constitutional rights. (Doc. 20.) Holloway counters that the Eleventh Amendment does not bar the claim against Bennett, that she has alleged Bennett was personally involved in the offending conduct, and that the existence of an unconstitutional policy was specifically pled. (Doc. 27.)

For Eleventh Amendment purposes, suits against state officials in their official capacity are treated as suits against the state - and not as suits against the official personally. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). An official capacity suit simply represents another way of bringing an action against the entity, where the official is an agent of the state entity. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978). For purposes of the federal civil rights laws, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." Will, 491 U.S. at 71.

The Missouri Highway Patrol is a state agency entitled to Eleventh Amendment immunity. Leith v. State of Mo. Highway Patrol, No. 05-4399-CV-S-FJG, 2007 WL 869508, at *2 (W.D. Mo. March 20, 2007). Indeed, in

Will, the Supreme Court found the Eleventh Amendment prevented a § 1983 suit from proceeding against the Department of State Police and the Director of State Police sued in his official capacity. 491 U.S. at 60. According to the complaint, James Bennett is a state trooper, employed by the Missouri State Highway Patrol, and is sued both in his official capacity and in his personal capacity. Any judgment against Trooper Bennett in his official capacity would be a judgment against the Missouri Highway Patrol, in violation of the Eleventh Amendment. See Kentucky v. Graham, 473 U.S. 159, 169 (1985). The Eleventh Amendment prevents Trooper Bennett from being sued in his official capacity for monetary relief. O'Leary v. California Highway Patrol, No.89-55747, 1991 WL 2545, at *1 (9th Cir. Jan. 14, 1991); King v. Miss. Highway Patrol, 827 F. Supp. 402, 404 (S.D. Miss. 1993); Schaefer v. Wilcock, 676 F. Supp. 1092, 1100 (D. Utah 1987) (finding that the Eleventh Amendment "requires dismissal of any claim for damages against the [Utah Highway Patrol] officials acting in their official capacities.") The motion to dismiss James Bennett in his official capacity is granted.

The Eleventh Amendment does not protect state officials from being sued in their individual and personal capacities. Hafer v. Melo, 502 U.S. 21, 30 (1991). Unlike official capacity suits, personal capacity suits impose personal liability and judgment on the official's personal assets - rather than on the state's assets. Graham, 473 U.S. at 165-66. As a result, state officials, sued in their individual capacities, are "persons" within the meaning of § 1983 and subject to liability for the official and unofficial nature of their acts. Id. at 31. State highway patrol troopers are therefore subject to § 1983 suits in their personal capacity. Estes-El v. Town of Indian Lake, 954 F. Supp. 527, 537 (N.D.N.Y. 1997); Schaefer, 676 F. Supp. at 1100.

"[T]o establish personal liability in a § 1983 action, it is enough to show that the official acting under color of state law, caused the deprivation of a federal right." Hafer, 502 U.S. at 25. The complaint alleges that defendant Bennett "restrained and confined Plaintiff Holloway, or caused Plaintiff Holloway to be restrained and confined against [her] will and without justification," (Doc. 1 at ¶ 36) and "caused [her] to be arrested without justification," (id. at ¶ 37),

"unjustly and falsely accused [her] of assaulting [two named persons],} (Id. at ¶ 50), and subjected plaintiff to "physically abusive conduct and excessive force . . . under color of State law," (id. at ¶ 79), thus depriving plaintiff of her federal civil rights. The complaint also alleges that Bennett "directly participated" in the deprivations while acting under color of state law. These allegations are sufficiently detailed to give the defendant fair notice of the claims and the grounds upon which they rest. The motion to dismiss James Bennett in his individual capacity must be denied.

**Thomas Benton and Mercile Behm: Count X and Count XI**

Counts X and XI allege that defendants Thomas Benton and Mercile Behm violated the plaintiff's federal civil rights. In a joint motion with Ameristar, Benton and Behm move to dismiss their respective counts, claiming only that the plaintiff failed to bring suit within the statutory limitations period. (Doc. 17.) Holloway counters that the statute of limitations has not run for the civil rights counts. (Doc. 28.)

As stated above, the applicable five-year limitations period had not run for the filing of the § 1983 claims against these defendants. The motion to dismiss Counts X and XI on behalf of defendants Benton and Behm is therefore denied.

For the reasons stated above,

**IT IS HEREBY ORDERED** that the motion of defendants Ameristar, Behm, and Benton to dismiss Counts I, III, V, X and XI (Doc. 17) is denied; as to Count VII the motion is sustained and that count is dismissed without prejudice.

**IT IS FURTHER ORDERED** that the motion of defendant Bennett to dismiss Counts II, IV, and VI (Doc. 19) is denied; as to Count IX the motion is sustained as to the claim against defendant in his official capacity, but denied as to the claim against said defendant in his personal capacity.

**IT IS FURTHER ORDERED** that the motion of defendant Missouri Gaming Commission to dismiss Count VIII (Doc. 9) is sustained.

```
                                        /S/ David D. Noce
                                UNITED STATES MAGISTRATE JUDGE
```

Signed on July 27, 2007.