```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF MISSOURI
                        EASTERN DIVISION


ALPHA HOLLOWAY,                   )
                                  )
            Plaintiff,            )
                                  )
      v.                          )      No. 4:07 CV 218 DDN
                                  )
AMERISTAR CASINO ST. CHARLES,     )
INC., JAMES A. BENNETT,           )
and MERCILE BEHM,                 )
                                  )
            Defendants.           )
```

**MEMORANDUM AND ORDER**

This action is before the court on the motions of defendants Ameristar Casino St. Charles, Inc. (Ameristar), James A. Bennett, and Mercile Behm to strike or exclude the expert testimony of David M. Brown, M.D. (Doc. 156) and Bret Schubert (Doc. 158). The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 32.) The court held a hearing on October 1, 2009.

**I. BACKGROUND**

On January 26, 2007, plaintiff Alpha Holloway brought this action against defendants Ameristar, the Missouri Gaming Commission, James A. Bennett, Mercile Behm, and Thomas Benton, following her arrest on November 22, 2002, while she was on the Ameristar Casino property. The arrest was in response to an alleged fight between the plaintiff and two other individuals. A criminal information was filed against Holloway in the Circuit Court of St. Charles County, though the prosecutor ultimately filed a memorandum of nolle prosequi and dismissed the criminal charges. Holloway alleged that she was subjected to physically abusive conduct and excessive force as part of the arrest, and invoked the subject matter jurisdiction granted to this court by 28 U.S.C. § 1343 (civil rights violations) and § 1367 (supplemental jurisdiction). In particular, she stated claims for assault and battery (Counts I-II), false arrest and false imprisonment (Counts III-IV), malicious prosecution (Counts V-VI), and a violation of her civil rights (Counts VII-XI). (Doc. 1.)

On July 27, 2007, this court issued an order, dismissing the Missouri Gaming Commission, and dismissing without prejudice counts against Ameristar and James Bennett. (Doc. 33.) On September 25, 2007, this court issued another order, dismissing without prejudice the counts against Thomas Benton and Mercile Behm. (Docs. 43-44.) On November 20, 2007, Holloway filed an amended complaint against Ameristar, Bennett, and Behm, with additional factual allegations. (Doc. 48.)

## II. ADMITTING EXPERT TESTIMONY

To be admissible, the proponent of the evidence must prove that the expert testimony is both reliable and helpful, and that the expert is qualified to be a witness. Fed. R. Evid. 104(a); Fed. R. Evid. 702 advisory committee's note. This showing must be made by a preponderance of the evidence. Bourjaily v. United States, 483 U.S. 171, 176 (1987). Rule 702 of the Federal Rules of Evidence guides the court in determining the admissibility of expert testimony.

Under Rule 702, the court must first find that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. Fed. R. Evid. 702. If the court makes this finding, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion, provided (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principals and methods reliably to the facts of the case. Id. An expert must explain how he arrived at his or her conclusions; the trial court may not simply take the expert's word for it. Fed. R. Evid. 702 advisory committee's note; Thomas v. City of Chattanooga, 398 F.3d 426, 432 (6th Cir. 2005).

Rule 702 incorporates the rulings of the Supreme Court's decisions in Kumho Tire and Daubert. Fed. R. Evid. 702 advisory committee's note. In those cases, the Supreme Court charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999); Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 597 (1993). In

exercising this gatekeeping responsibility, the trial judge must follow the standards of Rule 702, but can also consider the four factors found in Daubert.[1]  Fed. R. Evid. 702 advisory committee's note; Kumho Tire, 526 U.S. at 140-41 ("[T]he test of reliability is 'flexible,' and Daubert's list of specific factors neither necessarily nor exclusively applies to all experts or in every case.").  Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony, and the rule remains one of admissibility rather than exclusion.  Shuck v. CNH Am., LLC, 498 F.3d 868, 874 (8th Cir. 2007).

### III.  MOTION TO EXCLUDE OR STRIKE THE TESTIMONY OF DR. DAVID BROWN

All three defendants move to exclude or strike the expert testimony of Dr. David Brown.  (Doc. 156.)  First, the defendants argue that all of Dr. Brown's testimony should be stricken because he has failed to provide a list of his past testimony, as required by Rule 26.  Second, the defendants argue that Dr. Brown should not be allowed to testify as to what caused Holloway's wrist fracture.  They argue that Dr. Brown has not provided any facts supporting his causation analysis, and that his analysis is based entirely on Holloway's history of events.  Third, the defendants argue that Dr. Brown should not be allowed to testify as to Holloway's future prognosis or disability.  (Docs. 157, 185.)

In response, Holloway argues that Dr. Brown's opinions should not be stricken or excluded.  First, she argues that the defendants should be estopped from arguing that Dr. Brown was required to submit a list of his past testimony.  She notes that she told the defendants that Dr. Brown was not going to provide such a list, and that the defendants did not object.  She also argues that the defendants have failed to show they were prejudiced by non-disclosure of the list.  Second, she argues that Dr. Brown testified that his causation analysis was based on a reasonable

---

[1] In Daubert, the Supreme Court listed four non-exclusive factors for assessing the reliability of scientific expert testimony: (1) whether the expert's theory or technique can or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the technique has a known rate of error or standards controlling its operation; and (4) whether the theory enjoys general acceptance within the relevant scientific community.  Daubert, 509 U.S. at 592-94.

degree of medical certainty, and that the law does not require that he rule out all other possible causes.  Third, she argues that a doctor may give his opinion on a patient's prognosis.  (Docs. 166, 167.)

## IV.  DISCUSSION

**Rule 26 Disclosures**

Rule 26 requires an expert witness to prepare a written report. Fed. R. Civ. P. 26(a)(2)(B).  Among other things, the written report must contain a list of all cases in which the witness has testified as an expert, at trial or by deposition, during the previous four years.  Fed. R. Civ. P. 26(a)(2)(B)(v).  The purpose of these lists is to allow opposing counsel to review an expert's past testimony.  Coleman v. Dydula, 190 F.R.D. 316, 318 (W.D.N.Y. 1999).  If a party fails to follow the disclosure requirements of Rule 26, the court can prevent the expert from testifying.  Fed. R. Civ. P. 37(c)(1).

Dr. Brown testifies in about six to eight cases a year.  (Doc. 157, Ex. A at 2; Brown depo. at 5-6.)  Yet, Dr. Brown failed to list any of these cases in his export report.  (Doc. 157, Ex. C.)  In a letter to opposing counsel, counsel for Holloway addressed this issue.  (Doc. 167, Ex. 2.)  In her letter, dated July 9, 2009, she wrote,

> David [Hansen (counsel for Bennett)], it is my understanding that because Dr. Brown [cooperated] with the scheduling of the additional discovery deposition that you will not require Dr. Brown to provide a list of previous deposition and trial testimony.
>
> Matt [Fairless (counsel for Ameristar and Behm)], you have remained silent during our conversations regarding the necessity of this list from a treating physician.
>
> If either one of you will be objecting to Dr. Brown's testimony as an expert witness based on him not having a list of his previous deposition and trial testimony, please advise me of this immediately.  It is my understanding that this issue is already resolved.

(Id.)

Four days later, David Hansen responded to this letter.  (Doc. 167, Ex. 3.) His letter, which copied Matt Fairless, stated in relevant part,

> With regard to Dr. Brown, your office advised me on June 16, 2009, that Dr. Brown will make himself available for his

- 4 -

> deposition on June 28, 2009, at 9:00 a.m., for one hour, and that there would be no additional fee, other than that paid to him already. With that understanding, I did not pursue any motion to compel or produce a list of his previous cases or trial testimony.

(Id.)

After this July correspondence, the defendants filed their motion to strike on August 26, 2009. (Doc. 156.) The defendants did not file a motion to compel or a request for supplementation during this intervening period. See Fed. R. Civ. P. 26(e); Foreman v. Am. Road Lines, Inc., 623 F. Supp. 2d 1327, 1330-31 (S.D. Ala. 2008). By remaining silent for over a month, without pursuing any corrective measures, the defendants bear some of the blame for this situation. See Foreman, 623 F. Supp. 2d at 1330-31.

In Foreman, the court refused to strike an expert under similar circumstances. Id. In that case, the moving party "remained silent for months, then abruptly filed his Objection in hopes of parlaying an innocuous, easily-corrected omission into disallowance of [the expert's] testimony in its totality." Id. This type of "gamesmanship," the court ruled, flouted "the spirit of cooperation and fair play that animates Rule 26," and shifted the equities against the moving party. Id. Since any prejudice to the moving party was largely self-inflicted, the court refused to exclude the expert's testimony at trial. Id. at 1331.

This case is currently set for trial on February 1, 2010. (Doc. 195.) The trial date is not so close that compliance with Rule 26(a)(2)(B)(v) would be either moot or impractical. Accordingly, Dr. Brown shall be given the opportunity to amend his expert report to provide a listing of all cases in which he has testified during the past four years. See Coleman, 190 F.R.D. at 318. This list should include the name of the court, the name of the parties, and the docket number, and state whether the testimony was given during trial, or before trial. Id. at 318-19. Failure to provide this information will result in the

exclusion of Dr. Brown's testimony at trial.² This list shall be provided to the defendants by January 18, 2010.

**Causation Analysis**

Expert testimony must assist the trier of fact in understanding the evidence or a fact at issue. Fed. R. Evid. 702. This does not mean the expert must resolve an issue of fact to a scientific absolute. Kudabeck v. Kroger Co., 338 F.3d 856, 861 (8th Cir. 2003). In other words, an expert physician may testify that a specific injury could have several causes, and that no one cause can be established to a reasonable degree of medical certainty. See Clark v. Heidrick, 150 F.3d 912, 914 (8th Cir. 1998). In performing this "differential diagnosis," the physician begins "by 'ruling in' all scientifically plausible causes of the plaintiff's injury." Kudabeck, 338 F.3d at 860-61. In the next step, the physician "rules out" the least plausible causes of the injury, until only the most likely causes of the injury remain. Id. at 861. A medical opinion about causation that properly follows this differential diagnosis "is sufficiently reliable to satisfy Daubert." Id.

In this case, Dr. Brown has failed to properly "rule out" all the possible causes of Holloway's wrist injury. See Turner v. Iowa Fire Equip. Co., 229 F.3d 1202, 1208 (8th Cir. 2000) (affirming exclusion of expert's testimony, where the expert made no attempt to consider all possible causes of an injury or to exclude the unlikely causes). During his deposition, Dr. Brown noted that he could not tell what caused the wrist fracture simply by looking at it. (Doc. 157, Ex. A at 6; Brown depo. at 73.) In his opinion, there could be any number of actions that caused Holloway's fracture: (1) falling on an outstretched hand; (2) the officers placing the handcuffs over her wrists; (3) the officers twisting

---

²Holloway argues that Dr. Brown is not subject to Rule 26, because he is testifying as a treating physician and not an expert. (Doc. 167 at 4.) His own report contradicts this claim. (Doc. 167, Ex. C.) In his self-styled "report," Dr. Brown reviewed medical records from other hospitals and doctors, and offered an opinion on what caused Holloway's fractured wrist. (Id.) There is no showing that this opinion was reasonably necessary for diagnosis and treatment of Holloway's injury. To testify to this opinion as an expert at trial, Dr. Brown must comply with Rule 26.

and jerking the handcuffs; (4) Holloway twisting and jerking the handcuffs; and (5) Holloway punching the other women. (Doc. 157, Ex. B at 5; Brown depo. at 104-05.) Ultimately though, Dr. Brown concluded that Holloway's wrist fracture was "related to the handcuffing and the handcuffs being 'jerked upwards and twisted.'" (Doc. 157, Ex. C at 3.) Dr. Brown based his conclusion on the history provided by Holloway. (Id.) In his opinion, she seemed honest and forthright. (Doc. 157, Ex. B at 4; Brown depo. at 58.)

Dr. Brown's opinion that the wrist fracture was related to the handcuffing is not a proper expert opinion. When conducting a differential diagnosis, the expert physician must scientifically eliminate the other potential causes of a plaintiff's condition. Turner, 229 F.3d at 1209. The expert physician cannot eliminate causes based simply on the patient's credibility. See id. Issues of credibility belong to the jury. Nichols v. Am. Nat'l Ins. Co., 154 F.3d 875, 883 (8th Cir. 1998). "Weighing evidence and determining credibility are tasks exclusive to the jury, and an expert should not offer an opinion about the truthfulness of witness testimony." Id.

Dr. Brown reached his conclusion on causation by accepting Holloway's history as true - not by following the differential diagnosis procedure. He determined causation through a credibility analysis instead of a scientific one. Accordingly, Dr. Brown's conclusion on causation does not assist the trier of fact, and must be excluded. See McNabney v. Lab. Corp. of Am., 153 F. App'x 293, 295 (5th Cir. 2005) (unpublished per curiam) ("[The expert's] failure to consider and exclude other potential causes of [plaintiff's] injury before offering an opinion renders his testimony unreliable.").

**Future Prognosis**

To be admissible, expert testimony must be both reliable and helpful. Fed. R. Evid. 104(a); Fed. R. Evid. 702 advisory committee's note. If the expert evidence is speculative, unsupported by sufficient facts, or contrary to the facts of the case, the evidence is unreliable, and therefore inadmissible. United States v. Bailey, 571 F.3d 791, 803

(8th Cir. 2009); Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 757 (8th Cir. 2006).

Dr. Brown last examined Holloway in December 2005. (Doc. 157, Ex. A at 4; Brown depo. at 61-62.) Since that time, Dr. Brown did not provide any other services to Holloway. (Id.) He also had no evidence that she had received any treatment from anyone else. (Id.) According to Dr. Brown, Holloway was doing well and "was in no need of further treatment after I saw her. I haven't heard from her requesting treatment since then." (Doc. 157, Ex. A at 7; Brown depo. at 90-91.)

Dr. Brown has not treated Holloway in over four years. He also believed she did not need any further treatment. For her part, Holloway never requested any follow-up treatment. Taken together, any opinion about Holloway's future prognosis or problems would be speculative and unsupported by sufficient facts, and must therefore be excluded. See Li v. Aponte, No. 05 Civ. 6237 NRB, 2009 WL 1285928, at *6 (S.D.N.Y. May 5, 2009) ("Dr. Paswell testified during the Daubert hearing that . . . he [had] not seen or treated plaintiff for seventeen months. Thus, his sworn statements that plaintiff's physical condition was worsening could have been little more than speculation.").

### V. MOTION TO EXCLUDE OR STRIKE THE TESTIMONY OF BRET SCHUBERT

The defendants move to exclude or strike the expert testimony of Bret Schubert. (Doc. 158.) First, the defendants argue that Holloway failed to timely disclose Schubert as an expert. Second, they argue that Schubert's report fails to comply with Rule 26. Third, they argue that Schubert has failed to demonstrate he is qualified to offer scientific or technical opinions as to whether the videos were edited. (Docs. 159, 186.)

In response, Holloway argues that the late filing and the failure to fully comply with Rule 26 were substantially justified, and that the defendants have not been prejudiced by either action. She also argues that Schubert is qualified to testify as an expert, and that his opinions are both relevant and factually supported. (Doc. 169.)

**VI. DISCUSSION**

As noted above, expert testimony must be both reliable and helpful. Fed. R. Evid. 104(a); Fed. R. Evid. 702 advisory committee's note. If expert testimony will not assist the trier of fact in understanding the evidence or determining a fact in issue, it does not satisfy the dictates of Rule 702. Fed. R. Evid. 702.

In this case, the plaintiffs hope to admit the expert testimony of Bret Schubert, the President of Studio Worx, Inc. (Doc. 169, Ex. 1.) In his report, Schubert expresses several opinions about the quality and reliability of the video tapes that Ameristar provided to the parties. (Id.) These video tapes captured scenes from the night of Holloway's arrest at Ameristar.

**Bret Schubert's Qualifications**

Before a witness can offer his opinion at trial, the court must decide whether a particular expert has sufficient specialized knowledge to assist jurors in deciding the specific issues in the case. Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc., 254 F.3d 706, 715 (8th Cir. 2001). As part of this task, the court must determine exactly how far a witness's expertise carries. Id. A court must not allow an expert witness to testify to matters beyond the scope of his expertise. Id.

Bret Schubert is not qualified to testify on the issue of whether the tapes were edited. Schubert has spent over thirty years in the audio-visual field, and serves as the President of Studio Worx, Inc. (Doc. 159, Ex. 2 at 2.) As President, he helps his clients enhance and clean up audio and video tapes. (Id.; Doc. 159, Ex. 1 at 65; Schubert depo. at 321.) To that end, Schubert has taken classes in Photoshop. (Doc. 159, Ex. 1 at 67; Schubert depo. at 345.) On the other hand, Schubert had not taken any classes in video editing or recording. (Id.) He has never testified, as an expert, on the issue of whether a tape has been manipulated or edited. (Doc. 159, Ex. 1 at 63; Schubert depo. at 318.) Indeed, the subject of video tampering is "not the standard type of case" he works with. (Doc. 159, Ex. 1 at 64; Schubert depo. at 320.) Given his experience in the industry, Schubert could certainly qualify

as an expert in certain areas of the audio-visual field. However, Holloway has not shown that Schubert is qualified by experience or education to testify about issues of video editing or tampering. See United States v. Jones, No. 95-50119, 1996 WL 68236, at *5 (9th Cir. 1996) (unpublished); United States v. Welch, 945 F.2d 1378, 1382-83 (7th Cir. 1991).

In Jones, the defendant hoped to call an audio expert to testify that one of the surveillance tapes had two edits and two possible edits. Jones, 1996 WL 68236, at *5. The proposed expert was an audio engineer, who recorded, edited, and produced music and dialogue. Id. at *2. On the other hand, the engineer "did not have any formal training in forensic tape analysis," and was unfamiliar with recognized texts in the field. Id. at *5. Given these shortcomings, the district court found the engineer was not qualified in forensic tape analysis, and therefore could not testify to the authenticity of the surveillance tapes. Id. On appeal, the Ninth Circuit affirmed that the engineer was not qualified to testify as an expert. Id.

In Welch, the defendant also hoped to call an expert witness to testify about the possibility that a surveillance tape had been edited. Welch, 945 F.3d at 1382-83. The proposed expert was the chief audio production engineer for Wisconsin Public Radio, and was responsible for the sound quality of the station's broadcasts. Id. at 1381 n.4. He also taught classes that combined engineering and music principles at a technical college, and had analyzed tapes for the Madison Police Department. Id. Yet, the court noted that the engineer had never been qualified as an expert because "he lacked sufficient training or experience in forensic tape analysis." Id. at 1383. He was also unfamiliar with the use of technological instruments that could be used to detect alterations to tapes. Id. Accordingly, the Seventh Circuit affirmed the district court's decision that the engineer could not testify about possible editing of the tape. Id.

Looking to Jones and Welch only confirms that Schubert is not qualified to testify about possible tampering with the video recordings at issue.

**Assistance to the Jury**

To be admitted, expert testimony must assist the trier of fact in understanding the evidence or determining a fact in issue. Fed. R. Evid. 702. Expert testimony that would confuse or mislead the jury should therefore be excluded. Fireman's Fund Ins. Co. v. Canon U.S.A., Inc., 394 F.3d 1054, 1060 (8th Cir. 2005) (citing Fed. R. Evid. 403). Expert evidence has the potential to be both powerful and quite misleading, because of the difficulty in evaluating it. Daubert, 509 U.S. at 595. "Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses." Id.

Reviewing the tapes demonstrates that Schubert's testimony would serve only to confuse the jury. Viewing the tapes together reveals the displays are synchronized. Where separate video tapes capture the same events, these events occur at the same time on each tape. All the footage is in color, and with the exception of Red Friday 834, all the footage is of a similar quality. This footage, pieced together, creates a chronology of the events at the casino.

At 23:10:33, a security officer approached a card table, and spoke with Alpha Holloway. (Red Friday 6; Red Friday 37.) Holloway got up from the table, and followed the officer to an area a few feet away from the table. (Red Friday 37.) She spoke with the officer from 23:11:06 to 23:19:07. (Red Friday 6; Red Friday 37; Red Friday 39.) At 23:19:07, Holloway walked over to the card table, and grabbed her chips. (Red Friday 37.) After she grabbed her chips, she exchanged words with two African-American women, and a fight broke out at 23:19:12. (Red Friday 6; Red Friday 37; Red Friday 39.) Security officers rushed over to break up the fight, and one of the security guards handcuffed Holloway at 23:19:28. (Red Friday 37; Red Friday 39.) At 23:19:43, the security officer escorted Holloway off-screen. (Red Friday 37.) From 23:19:47, until 23:20:11, there was no video footage of Holloway. From 23:20:11, until 23:20:31, three separate video cameras captured a security officer escorting Holloway, in handcuffs, through areas of the casino. (Red Friday 23; Red Friday 834; Red Friday 973.) From 23:20:31, until 23:21:14, there was no video footage of Holloway. From 23:21:14, to

23:21:34, video footage showed Holloway being escorted, in handcuffs, to a door, presumably the interview area. (Red Friday 309.) Holloway was off-camera from 23:21:14, until 00:28:33. (Id.) The last piece of video footage captured Holloway, no longer in handcuffs, walking from the interview area to the ticket window to cash her chips, a period running from 00:28:33 to 00:30:55. (Id.)

Schubert did not take issue with the footage of the fight or of Officer Bennett handcuffing Holloway. (Doc. 159, Ex. 1 at 69-70; Schubert depo. at 364-65.) This footage was "fine." Id. Schubert did, however, take issue with footage in Red Friday 39. (Doc. 159, Ex. 2 at 6.) In Red Friday 39, the screen went black for a period of twenty-one seconds, though the video display counter indicated that two minutes and forty-six seconds elapsed during the black-out period - from 23:21:00 to 23:23:46. (Red Friday 39.) While this black-out is somewhat confusing, Holloway was already off-screen during the period at issue, being walked from the area of her arrest to the interview area. Indeed, the camera at issue was trained on the area around the card table, and was focused on the two African-American women when it no longer displayed images. (Id.) When the images returned, the camera went searching for these women. (Id.) Had the camera been on the entire time, it would not have captured any footage of Holloway.

Because Holloway would not have been on-screen during the period without images, any testimony that suggests Ameristar tampered with the video is simply irrelevant to the issues at hand. Forcing the jury to decide whether the tape was doctored or not would only serve to confuse the jury. The allegations in this case concern the events that happened before and during Holloway's arrest, and the events that occurred while she was in the interview room. (See Doc. 48.) Schubert has indicated that the footage of the fight and arrest was "fine," and the events in the interview room were off-camera. Accordingly, testimony about whether Ameristar's video tapes complied with state regulations or whether they were edited would not assist the trier of fact. Schubert's expert testimony is excluded for this reason as well.

## VII. CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that the motion of defendants to strike or exclude the expert testimony of David M. Brown, M.D. (Doc. 156) is granted in part and otherwise denied, in that Dr. Brown may not testify at trial as to what caused Alpha Holloway's wrist fracture or about Holloway's future prognosis or problems.

**IT IS FURTHER ORDERED** that Dr. Brown provide the defendants with a list of all the cases in which he has testified during the past four years no later than January 18, 2010.

**IT IS FURTHER ORDERED** that the motion of defendants to strike or exclude the expert testimony of Bret Schubert (Doc. 158) is sustained. Bret Schubert may not testify at trial.

    /S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on December 18, 2009.