UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ALPHA HOLLOWAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:07 CV 218 DDN |
| ) | |
| AMERISTAR CASINO ST. CHARLES, ) | |
| INC., JAMES A. BENNETT, ) | |
| and MERCILE BEHM, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This action is before the court on the motion of defendant James A. Bennett for partial summary judgment (Doc. 146) and the motion of defendants Ameristar Casino St. Charles, Inc. (Ameristar) and Mercile Behm for summary judgment (Doc. 148). The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 32.) The court held a hearing on October 1, 2009.

**I.  BACKGROUND**

On January 26, 2007, plaintiff Alpha Holloway brought this action against defendants Ameristar, the Missouri Gaming Commission, James A. Bennett, Mercile Behm, and Thomas Benton, following her arrest on November 22, 2002, while she was on the Ameristar Casino property. The arrest was in response to a fight that involved the plaintiff and two other individuals. A criminal information was filed against Holloway in the Circuit Court of St. Charles County, though the prosecutor ultimately filed a memorandum of nolle prosequi and dismissed the criminal charges. Holloway alleged that she was subjected to physically abusive conduct and excessive force as part of the arrest, and invoked the subject matter jurisdiction granted to this court by 28 U.S.C. § 1343 (civil rights violations) and § 1367 (supplemental jurisdiction). In particular, she stated claims for assault and battery (Counts I-II), false arrest and false imprisonment (Counts III-IV), malicious

prosecution (Counts V-VI), and a violation of her civil rights (Counts VII-XI). (Doc. 1.)

On July 27, 2007, this court issued an order, dismissing the Missouri Gaming Commission, and dismissing without prejudice certain counts against Ameristar and James Bennett. (Doc. 33.) On September 25, 2007, this court issued another order, dismissing without prejudice the counts against Thomas Benton and Mercile Behm. (Docs. 43-44.) On November 20, 2007, Holloway filed an amended complaint against Ameristar, Bennett, and Behm, with additional factual allegations. (Doc. 48.)

The amended complaint contains nine counts. In Counts I-II, Holloway asserts a claim for assault and battery against Ameristar and Bennett, respectively. In Counts III-IV, she asserts a claim for false arrest and false imprisonment against Ameristar and Bennett, respectively. In Counts V-VI, she asserts a claim for malicious prosecution against Ameristar and Bennett, respectively. Finally, in Counts VII, IX, and XI, she asserts a claim for a violation of her civil rights against Ameristar, Bennett, and Behm, respectively. (Id.)

## II. MOTION FOR SUMMARY JUDGMENT BY AMERISTAR AND BEHM

Ameristar and Behm move for summary judgment. First, they argue that there is no evidence Ameristar employees committed an assault or battery on Holloway. In particular, they argue that the undisputed facts show that no Ameristar employee ever touched Holloway, or acted in concert with Officer Bennett. Second, they argue that there is no evidence Ameristar employees arrested or detained Holloway. In addition, they argue that probable cause supported Trooper Bennett's decision to arrest Holloway. Third, they argue that there is no evidence Ameristar employees instigated the prosecution of Holloway. Fourth, they argue there is no evidence Ameristar or its employees deprived Holloway of her constitutional rights. They argue that they are not state actors, there is no evidence of any unconstitutional policy or custom, and that there was no meeting of the minds between them and Officer Bennett. (Docs. 149, 190.)

In response, Holloway argues there are material issues of fact. First, she argues that Mercile Behm, an Ameristar employee, committed assault and battery by inciting or encouraging Officer Bennett's tortious acts. Second, she argues that Ameristar and Behm caused or encouraged her false arrest and imprisonment. Third, she argues that an employer may be liable for malicious prosecution instigated by an employee. In particular, she argues that Officers Taborsky and Bennett provided false testimony to the prosecutor's office. Fourth, she argues that Ameristar and Behm violated her constitutional rights. She argues that Bennett used excessive force in arresting her, and that Behm showed deliberate indifference by refusing to call for medical attention that would have helped her. She argues that Behm and Ameristar were state actors because they acted in concert with Officer Bennett. (Doc. 170.)

### III. MOTION FOR SUMMARY JUDGMENT BY BENNETT

James Bennett moves for partial summary judgment. He argues that an officer who has probable cause to believe a suspect has committed a crime cannot be liable for false arrest, false imprisonment, or malicious prosecution. He argues that the undisputed facts illustrate he had probable cause to arrest Holloway. He does not move for summary judgment on the claims of assault and battery, or of civil rights violations. (Docs. 147, 193.)

In response, Holloway argues there are material issues of fact. First, she argues that logical inferences show Bennett unlawfully arrested her. In particular, she argues that the two African-American women were the initial aggressors, and that the arrest could not be supported by Holloway's actions against the two women. Second, she argues that Bennett put false information into his police report, failed to make a legitimate inquiry into what happened, and intended that Holloway be charged with assault. (Doc. 175.)

### IV. STATEMENT OF UNDISPUTED FACTS

On November 22, 2002, Alpha Holloway (Holloway) and her husband, Dennis Holloway (Dennis), drove to the Ameristar Casino. (Doc. 150, Ex. A at 2-3; Holloway depo. at 56-57.) A few hours after they arrived, the

couple had dinner and a few drinks. (Doc. 150, Ex. A at 5; Holloway depo. at 60.) Holloway had two martinis and some beer. (Doc. 182, Ex. 32 at ¶ 14.)

Just before 9:00 p.m., Holloway and her husband sat down at the blackjack table. (Plaintiff's Ex. 3; Red Friday 6.) Holloway drank mostly water while she was at the Blackjack table. (Doc. 182, Ex. 13 at 14; Holloway depo. at 75-76.) In her opinion, she was not intoxicated, and did not appear intoxicated. (Doc. 182, Ex. 13 at 15; Holloway depo. at 78.) While she was playing blackjack, two African-American women stood behind her, and made comments about her playing style. (Doc. 150, Ex. A at 7-9; Holloway depo. at 81-83.) The women moaned and groaned about Holloway for about fifteen minutes. (Id.) The dealer did not instruct the women to stop harassing Holloway. (Doc. 182, Ex. 32 at ¶ 5.) According to Holloway, the dealer herself commented on Holloway's playing style. (Doc. 182, Ex. 13 at 17; Holloway depo. at 87-88.)

After the dealer left the table to talk to the pit boss, or floor supervisor, Holloway got up from the table, and followed suit. (Doc. 147, Ex. A at 10; Holloway depo. at 90-92.) On her way over, Holloway slid off her clog and fell down on her butt. (Doc. 150, Ex. A at 12; Holloway depo. at 96.) When she got to the pit boss, Holloway told the boss, Michelle Welch, that she thought the dealer was complaining about her, and that it was inappropriate for the dealer to be doing that. (Doc. 150, Ex. A at 10; Holloway depo. at 92.) Welch responded by telling Holloway that she was "causing a disturbance." (Doc. 150, Ex. A at 11; Holloway depo. at 93.)

According to Welch, Holloway had fallen down as she walked over to talk to her. (Doc. 150, Ex. M at 2; Welch depo. at 65-66.) In talking to her, Welch found Holloway to be intoxicated. (Doc. 150, Ex. M at 2; Welch depo. at 66-67.) Welch also noted that Holloway had been arguing with other guests at her table. (Id.) After speaking with Welch, Holloway returned to the blackjack table. (Doc. 150, Ex. A at 13; Holloway depo. at 99.) Meanwhile, Welch had contacted Ameristar security, and asked that Holloway be removed because of intoxication. (Doc. 150, Ex. M at 2; Welch depo. at 68.)

After playing two hands, Ameristar Security Officer Timothy Taborsky approached Holloway, and asked her to step back from the table to talk to him. (Doc. 150, Ex. A at 13; Holloway depo. at 99; Doc. 150, Ex. G at 2; Taborsky depo. at 59-60.) After a brief initial conversation with him, Holloway got up from the table, and walked over to where Taborsky was standing. (Doc. 150, Ex. A at 15-16; Holloway depo. at 101-02.) Holloway and Taborsky spoke for about ten minutes, during which Officer Taborsky asked Holloway to leave the casino. (Doc. 150, Ex. A at 17-18; Holloway depo. at 110-11.) At some point, Dennis stepped in, and told his wife that they needed to leave. (Id.) Eventually, Holloway agreed to leave. (Doc. 150, Ex. G at 5; Taborsky depo. at 81.) During their conversation, Taborsky did not raise his voice or touch Holloway inappropriately. (Doc. 150, Ex. A at 18; Holloway depo. at 111.) Holloway understood Taborsky was a security officer for Ameristar. (Doc. 150, Ex. A at 16; Holloway depo. at 102.) Taborsky could not say whether Holloway was intoxicated. (Doc. 182, Ex. 16 at 13; Taborsky depo. at 81.)

After speaking with Officer Taborsky, Holloway walked to the card table to retrieve her chips. (Doc. 150, Ex. A at 19; Holloway depo. at 114.) In her opinion, she then turned around, and - without intending to - walked in the direction of the two African-American women. (Doc. 150, Ex. A at 20; Holloway depo. at 118.) Holloway stopped within a foot of the women, and asked them, "Are you happy now?" (Doc. 150, Ex. A at 21, 23; Holloway depo. at 119, 121.) The shorter woman responded by shoving Holloway, after which Holloway felt someone hit her on the head, provoking a fight between all three women. (Id.; Red Friday 37.) Ameristar surveillance recorded the conversation between Officer Taborsky and Holloway, and the subsequent fight. (Red Friday 37; Red Friday 39.)

Missouri State Trooper James Bennett was assigned to the Missouri Gaming Division, and was working at the Ameristar Casino that night. (Doc. 150, Ex. B at 3; Bennett depo. at 36-37.) In that role, his job was to watch over patrons at the casino, and to enforce the gaming laws and regulations. (Id.) The Gaming Division of the Highway Patrol acts as a regulatory enforcement agency for casinos. (Doc. 150, Ex. B at 18;

Bennett depo. at 257.)  Bennett reported to Sergeant Howard Sardis of the Missouri State Highway Gaming Division.  (Doc. 150, Ex. B at 6; Bennett depo. at 55.)  He did not have any authority to act on behalf of Ameristar.  (Doc. 150, Ex. B at 20; Bennett depo. at 262.)

Officer Bennett observed Holloway's interaction with Taborsky, and based on this interaction, believed she was intoxicated.  (Doc. 150, Ex. B at 8, 12; Bennett depo. at 99-100, 153.)  Trooper Bennett also saw Dennis insert himself between Taborsky and Holloway, in what seemed an effort to separate the two.  (Doc. 147, Ex. B at 3; Bennett depo. at 101.)  Finally, Bennett observed Holloway collect her chips and walk towards the African-American females.  (Doc. 150, Ex. B at 9; Bennett depo. at 114-15.)  In his opinion, Holloway "stormed into" the group of women; her shoulders were cocked forward, she was moving at an aggressive pace, and her face displayed a lot of anger.  (Id.)  The next moment, Bennett observed the "fistfight" between Holloway and the two women.  (Doc. 150, Ex. B at 9; Bennett depo. at 117.)  As he saw it, all three women were throwing punches and pulling shirts, and Holloway connected on one of her punches.  (Id.; Doc. 150, Ex. B at 12; Bennett depo. at 150.)  Holloway admits that she "started swinging" after she was hit in the head.  (Doc. 150, Ex. A at 38; Holloway depo. at 254.)

Bennett reacted to the fight by announcing his presence as "Highway Patrol."  (Doc. 150, Ex. B at 10; Bennett depo. at 118.)  He followed Holloway, informed her she was under arrest, and placed her in handcuffs.  (Id.)  The arrest occurred around 11:20 p.m.  (Doc. 150, Ex. D at 2.)  Almost immediately after handcuffing Holloway, Bennett radioed casino security to have Mercile Behm help him with Holloway.  (Doc. 150, Ex. B at 19; Bennett depo. at 259.)  At the time, Behm wore a uniform and badge that identified her as an Ameristar employee.  (Doc. 182, Ex. 15 at 38; Behm depo. at 214.)  She was also licensed as a security officer by St. Charles County.  (Doc. 150, Ex. E at 2; Behm depo. at 20-21.)

According to Bennett, Behm met up with him around the main staircase, on the king side, just as he was escorting Holloway across the gaming floor and to the Missouri Gaming Commission office.  (Doc. 150, Ex. B at 10, 19; Bennett depo. at 120, 260.)  According to

Holloway, Behm was in the area of the king staircase, when Bennett allegedly broke her wrist. (Doc. 182, Ex. 32 at ¶ 20.) According to Behm, she met Bennett at the top of the stairs, going down to the "King hold." (Doc. 150, Ex. E at 6; Behm depo. at 124-125.) Dennis followed the escort from fifteen feet behind. (Doc. 150, Ex. J at 3; Dennis depo. at 78-79.) During the escort, Bennett repeatedly told Holloway to stop resisting. (Doc. 147, Ex. A at 21; Holloway depo. at 133.)

Bennett's request for Behm to assist him was not an order, but simply a request. (Doc. 150, Ex. B at 21; Bennett depo. at 272.) He had no authority over Ameristar personnel, and in his opinion, he could not compel their assistance. (Doc. 150, Ex. B at 18, 19-20; Bennet depo. at 256, 261-62.) As a result, Agents of the Missouri Gaming Commission did not expect Ameristar security officers to assist them, but simply welcomed their assistance when they gave it. (Doc. 182, Ex. 17 at 9; Sardis depo. at 99.) Ameristar's security officers gave such assistance on a regular basis. (Id.) Indeed, it was customary for Ameristar employees to assist agents of the Gaming Commission, and they were often present during arrests of casino patrons. (Doc. 150, Ex. B at 21; Bennett depo. at 273; Doc. 182, Ex. 15 at 22; Behm depo. at 131.) Still, Behm and the other Ameristar security officers did not report to Bennett. (Doc. 150, Ex. B at 18; Bennett depo. at 256.) Ameristar security officers could not make arrests. (Doc. 150, Ex. B at 13; Bennett depo. at 163-64.)

Likewise, Bennett would, at times, offer his assistance to Ameristar's security officers. (Doc. 150, Ex. B at 7; Bennett depo. at 83-84.) Examples of such assistance could include Bennett arresting someone fighting in the casino or helping to resuscitate someone sick. (Doc. 150, Ex. B at 7; Bennett depo. at 84.) Missouri State Highway Patrol troopers are part of the staff at the Missouri Gaming Commission's Ameristar office. (Doc. 150, Ex. B at 18; Bennett depo. at 256.)

According to Holloway, Officer Bennett broke her wrist around the area of the king staircase. (Doc. 182, Ex. 32 at ¶ 20.) According to Holloway, she told Bennett that he was hurting her. (Doc. 150, Ex. A at 37; Holloway depo. at 249.) Bennett allegedly responded by saying

he would show her hurt.  (Id.)  The next moment, Holloway found herself in real pain.  (Id.)  In her deposition, Behm testified that she never saw Bennett yank or pull on the handcuffs, or otherwise be rough with Holloway.  (Doc. 150, Ex. E at 13; Behm depo. at 192-93.)

Behm accompanied Bennett and Holloway to the Missouri Gaming Commission office, located beneath the gaming floor.  (Doc. 150, Ex. E at 7; Behm depo. at 128-29.)  Bennett told Behm that he had arrested Holloway for assaulting some guests.  (Doc. 150, Ex. E at 7; Behm depo. at 126-27.)  While Holloway was in the office, Bennett left to obtain witness statements.  (Doc. 182, Ex. 14 at 40; Bennett depo. at 189.)  During this time, Behm remained alone with Holloway in the Gaming Commission office.  (Id.)  According to Bennett, Holloway was not free to leave.  (Id.)  At some point, Behm asked Bennett to remove Holloway's handcuffs, and he complied.  (Doc. 150, Ex. A at 24-25; Holloway depo. at 143-44.)  Behm never touched Holloway.  (Id.)  Before leaving the office, a security guard trained as an emergency medical technician examined Holloway's arm, and stated that her wrist had been broken.  (Doc. 150, Ex. A at 30-31; Holloway depo. at 158-59.)  After Bennett wrote Holloway a summons, he released her on her own recognizance.  (Doc. 150, Ex. B at 15; Bennett depo. at 208.)  From the casino, Holloway went straight to the emergency room.  (Doc. 150, Ex. A at 32; Holloway depo. at 161.)

Shortly after releasing her, Bennett secured two surveillance tapes from Ameristar personnel.  (Doc. 150, Ex. D at ¶ 12.)  These tapes had captured Holloway's conversation with Taborsky, and the subsequent fight.  (Id.)  On November 23, 2002, Bennett completed his arrest report.  (Id. at 1.)  In the arrest report, Officer Bennett noted that Alpha Holloway and her husband had been intoxicated that night.  (Id. at ¶ 2.)  Describing the fight, Bennett wrote that "Alpha Holloway charged into the group [of black women] with her mouth running and pushed [one of the women] in the chest with her right hand. At the same time, she knocked into another black female. . . ."  (Id. at ¶ 3.)  Together, these actions "triggered a pushing match between the women, which then lead to punches being thrown by [one of the black females] and Alpha Holloway."  (Id.)  In his voluntary statement, Office Taborsky

noted that Holloway had picked up her chips and then slammed into the two black women. (Doc. 182, Ex. 34.)

On April 7, 2003, the St. Charles County Prosecutor's Office filed an information, charging Holloway with two counts of third-degree assault. (Doc. 150, Ex. H.) After two witnesses failed to appear for a deposition, the prosecutor's office filed a nolle prosequi, and dismissed the criminal case. (Doc. 150, Ex. I.)

## V. SUMMARY JUDGMENT STANDARD

Summary judgment must be granted when the pleadings and proffer of evidence demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986); Devin v. Schwan's Home Serv., Inc., 491 F.3d 778, 785 (8th Cir. 2007). The court must view the evidence in the light most favorable to the nonmoving party and accord it the benefit of all reasonable inferences. Devin, 491 F.3d at 785. A fact is "material" if it could affect the ultimate disposition of the case, and a factual dispute is "genuine" if there is substantial evidence to support a reasonable jury verdict in favor of the non-moving party. Die-Cutting Diversified, Inc. v. United Nat'l Ins. Co., 353 F. Supp. 2d 1053, 1054-55 (E.D. Mo. 2004).

Initially, the moving party must demonstrate the absence of an issue for trial. Celotex, 477 U.S. at 323. Once a motion is properly made and supported, the nonmoving party may not rest upon the allegations in its pleadings but must instead proffer admissible evidence that demonstrates a genuine issue of material fact. Fed. R. Civ. P. 56(e); Howard v. Columbia Pub. Sch. Dist., 363 F.3d 797, 800 (8th Cir. 2004); Krein v. DBA Corp., 327 F.3d 723, 726 (8th Cir. 2003).

## VI. DISCUSSION

**Count I**

In Count I, Holloway asserts a claim for assault and battery against Ameristar.

An assault is any "unlawful offer or attempt to injure another with the apparent present ability to effectuate the attempt under

circumstances creating a fear of imminent peril." Armoneit v. Ezell, 59 S.W.3d 628, 632 (Mo. Ct. App. 2001). An assault does not require actual violence or offensive contact. Phelps v. Bross, 73 S.W.3d 651, 656 (Mo. Ct. App. 2002). A battery is the willful, offensive touching of another person, and can be seen as the consummation of an assault. Id.; Armoneit, 59 S.W.3d at 632. Every battery contains an assault. Armoneit, 59 S.W.3d at 632.

During the conversation with Holloway, Officer Taborsky did not raise his voice or touch Holloway inappropriately. (Doc. 150, Ex. A at 18; Holloway depo. at 111.) There is no testimony Holloway ever felt threatened by Officer Taborsky. Holloway also testified that Officer Behm never touched her, and that Behm simply walked alongside her. (Doc. 182, Ex. 13 at 29; Holloway depo. at 134.) Holloway testified that she asked Officer Behm for help, but there is no testimony that she ever felt threatened by Officer Behm, or feared that she would strike her. Likewise, there is no evidence that Behm ever encouraged or incited Officer Bennett to assault or batter Holloway. Holloway testified that Officer Behm was present when Officer Bennett allegedly broke her wrist. (Doc. 182, Ex. 32 at ¶ 8.) However, "merely being present in a particular place at a particular time is not proof of battery." Woods v. Wills, 400 F. Supp. 2d 1145, 1172 (E.D. Mo. 2005). Under the circumstances, Holloway has failed to proffer legally sufficient evidence that either Officer Taborsky or Officer Behm committed an assault or battery.

A corporation, on its own, cannot commit an assault or battery. Presley v. Cent. Terminal Co., 142 S.W.2d 799, 803 (Mo. Ct. App. 1940). As a result, the "sole manner in which a [corporation] could be held liable for an assault and battery would be through some agent or employee." Id. If the employee has not committed a wrong, neither has the corporation. See id. ("[T]he exoneration of the servant discharges the master. . . ."). Since Holloway has failed to proffer legally sufficient evidence that either Officer Taborsky or Officer Behm committed an assault or battery, she has also failed to proffer legally sufficient evidence that Ameristar committed an assault or battery.

In the amended complaint, Holloway alleged that Officer Bennett was acting as an agent or employee of Ameristar when he committed the alleged tortious acts. (Doc. 48 at ¶¶ 38-47.) However, the undisputed facts show that Officer Bennett was a Missouri State Trooper and that he was assigned to the Missouri Gaming Division. Bennett reported to Sergeant Howard Sadis of the Missouri State Highway Gaming Division, and testified that he did not have any authority to act on behalf of Ameristar. Indeed, when Bennett went to arrest Holloway, he announced his presence as "Highway Patrol." Holloway has failed to proffer legally sufficient evidence that Bennett would act on Ameristar's behalf, or that Ameristar was able to control Bennett's conduct. See Bach v. Winfield-Foley Fire Prot. Dist., 257 S.W.3d 605, 608 (Mo. 2008) (setting out the standard for determining a principal-agent relationship); see also Fioretti v. Aztar Ind. Gaming Co., 790 N.E.2d 587, 591-92 (Ind. Ct. App. 2003) (holding that a state trooper was not an agent or employee of a riverboat casino). Summary judgment is granted on Count I.

**Count II**

In Count II, Holloway asserts a claim for assault and battery against Bennett. Bennett does not move for summary judgment on this count. Accordingly, Count II remains for trial.

**Count III**

In Count III, Holloway asserts a claim for false arrest and false imprisonment against Ameristar.

A false arrest occurs when an individual is confined without legal justification. Kurtz v. City of Shrewsbury, 245 F.3d 753, 757 (8th Cir. 2001). In an action for false arrest, the unlawfulness of the restraint is one of the key elements. Id. In other words, a finding of probable cause for arrest will defeat a claim for false arrest. See id. "A police officer who has probable cause to believe that a suspect has committed a crime is not liable for the state law tort of false arrest simply because the suspect is later proven innocent or the charges are dismissed." Id. An officer has probable cause to make an arrest if he

has reasonable grounds to believe that the person is guilty of the offense. Id. (citing Rustici v. Weidemeyer, 673 S.W.2d 762, 769 (Mo. 1984)). This standard is based on the perspective of a prudent, cautious, and trained police officer. Burleson v. Dir. of Revenue, State of Mo., 92 S.W.3d 218, 222 (Mo. Ct. App. 2002).

Shortly before the fight broke out, Officer Bennett observed Holloway's interaction with Officer Taborsky, and observed Dennis insert himself between the two. Based on these interactions, Bennett believed Holloway was intoxicated. Bennett also observed Holloway aggressively approach the group of women, with – as he saw it – her shoulders cocked forward and her face full of anger. Finally, Bennett observed the fight break out between the women. In his opinion, all three women were throwing punches and pulling shirts, and Holloway had connected on one of her punches. Under these facts, as viewed from Officer Bennett's perspective, there were reasonable grounds to believe that Holloway was guilty of assault in the third degree. See Mo. Rev. Stat. § 565.070.1(1) ("A person commits the crime of assault in the third degree if the person attempts to cause or recklessly causes physical injury to another person.") (emphasis added).

Because Officer Bennett had probable cause to arrest Holloway, her claim for false arrest and false imprisonment must fail. See Kurtz, 245 F.3d at 757. As noted in Kurtz, the fact that a suspect is later proven innocent or that the charges are dismissed is simply irrelevant. Summary judgment is granted on Count III.

**Count IV**

In Count IV, Holloway asserts a claim for false arrest and false imprisonment against Bennett. For the reasons stated immediately above, this claim fails as a matter of law. Summary judgment is granted on Count IV.

**Count V**

In Count V, Holloway asserts a claim of malicious prosecution against Ameristar.

To survive summary judgment, an action for malicious prosecution must show that the prosecution lacked probable cause. Kurtz, 245 F.3d at 757 (citing Sanders v. Daniel Int'l Corp., 682 S.W.2d 803, 807 (Mo. 1984)). Malicious prosecution also requires a showing that the defendant's conduct was actuated by malice. Id.

In this case, Officer Bennett had probable cause to arrest Holloway after witnessing her participate in a fight. Surveillance tapes of the incident confirmed that Holloway had participated in the fight. (Red Friday 37.) Accordingly, probable cause supported Holloway's prosecution for third-degree assault. See Mo. Rev. Stat. § 565.070.1(1). Summary judgment is granted on Count V.

**Count VI**

In Count VI, Holloway asserts a claim of malicious prosecution against Bennett. For the reasons stated immediately above, this claim fails as a matter of law. Summary judgment is granted on Count VI.

**Count VII**

In Count VII, Holloway asserts a claim against Ameristar for violating her civil rights under 42 U.S.C. § 1983.

Section 1983 creates a cause of action for litigating alleged civil rights violations. Crumpley-Patterson v. Trinity Lutheran Hosp., 388 F.3d 588, 590 (8th Cir. 2004). To state a claim for a § 1983 violation, a plaintiff must allege (1) the violation of a right secured by the Constitution and laws of the United States, and (2) that the alleged deprivation was committed by a person acting under color of state law. Roe v. Humke, 128 F.3d 1213, 1215 (8th Cir. 1997). "[U]nder color of state law" imposes the same requirements as the "state action" requirement of the Fourteenth Amendment. Lugar v. Edmondson Oil Co., 457 U.S. 922, 929 (1982).

A private corporation cannot be held liable under § 1983 on a theory of respondeat superior. Smith v. Insley's Inc., 499 F.3d 875, 880 (8th Cir. 2007). Instead, a private corporation will only be liable for its own unconstitutional policies. Crumpley-Patterson, 388 F.3d at 590. "The test is whether there exists a policy, custom or action by

those who represent official policy which inflicts an injury actionable under § 1983." Id.

In this case, Holloway has not provided any evidence of the existence of such a policy, custom, or action. In the amended complaint, Holloway alleged that Ameristar had a policy of preventing anything embarrassing from being caught on surveillance. (Doc. 48 at ¶ 35.) However, a review of the videotapes revealed that Holloway's arrest was captured on videotape, and that the videotape with the black-out would not have captured any footage of Holloway. (Doc. 197 at 12.) Put differently, the missing video footage is unrelated to Officer Bennett's alleged use of excessive force. See City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989) (noting that there must be "a direct causal link between" an entity's alleged policy or custom and the alleged constitutional deprivation). Under the circumstances, Holloway has failed to proffer legally sufficient evidence of an unconstitutional policy, custom, or action. Summary judgment is granted on Count VII.

**Count IX**

In Count IX, Holloway asserts a claim against Bennett for violating her civil rights under 42 U.S.C. § 1983. Bennett does not move for summary judgment on this count. Accordingly, Count IX remains for trial.

**Count XI**

In Count XI, Holloway asserts a claim against Behm for violating her civil rights under 42 U.S.C. § 1983.

As noted above, § 1983 only prohibits deprivations by those acting under color of state law. Roe, 128 F.3d at 1215. In general, this requirement prevents the law from reaching the conduct of private parties acting in their individual capacities. Lindsey v. Detroit Entm't, LLC, 484 F.3d 824, 827 (6th Cir. 2007); Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992) ("Only in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes."). However, there are three primary circumstances in which a private actor can be treated as a state actor: (1) where the state has delegated to

a private party a power that has traditionally and exclusively been reserved to the state; (2) where a private actor is a willful participant in joint activity with the state or its agents; and (3) where there is pervasive entwinement between the state and the private actor. Wickersham v. City of Columbia, 481 F.3d 591, 597 (8th Cir. 2007).

Despite these guidelines, application of the state action requirement remains one of the more difficult and troublesome areas of civil rights litigation. Gallagher v. Neil Young Freedom Concert, 49 F.3d 1442, 1447 (10th Cir. 1995). As the Supreme Court has noted, determining whether particular conduct constitutes private action or state action "frequently admits of no easy answer." Jackson v. Metro. Edison Co., 419 U.S. 345, 350 (1974). In fact, the Supreme Court has declined to decide whether, and under what circumstances, private security guards are acting under color of state law. Lindsey, 484 F.3d at 828 (citing Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 163 n.14 (1978)).

**State Power**

For a private party to be considered a state actor, it is not enough to show that the private actor performed a public function. Durante v. Fairlane Town Ctr., 201 F. App'x 338, 341 (6th Cir. 2006). Instead, it must be shown that the private actor performed a public function "which has traditionally and exclusively been reserved to the State." Id. This test is not easy to satisfy. Id. For private security guards, the mere fact that their job may include the investigation of a crime does not transform their actions into state action. Id. To become state actors, private security guards must be endowed with police powers that are plenary, and not simply police-like. Id.; Romanski Detroit Entm't, L.L.C., 428 F.3d 629, 637 (6th Cir. 2005) ("Where private security guards are endowed by law with plenary police powers such that they are de facto police officers, they may qualify as state actors under the public function test.").

Mercile Behm did not arrest Alpha Holloway. In fact, she had no power to make arrests as an Ameristar security officer. (Doc. 150, Ex.

E at 14; Behm depo. at 216.) Officer Bennett testified that he was aware that Ameristar security lacked the power of arrest. (Doc. 150, Ex. B at 13; Bennett depo. at 163-64.) Behm also had no authority to carry a gun. Mo. Rev. Stat. § 71.195.2. Under Missouri law, licensed security guards are defined as individuals who are paid to protect people or property, and who are "not authorized to carry a firearm. . . ." Id. The City of St. Charles ordinance, under which Behm was specifically licensed, further defined security guards as individuals who are not "primarily engaged in the performance of investigative work." (Doc. 150, Ex. L at 2) (citing City of St. Charles, Mo., Ordinance § 118.20 (1995)).

Mercile Behm was a licensed security guard at Ameristar. According to Missouri's licensing laws and her own job duties, she could not carry a gun, could not make arrests, and could not be primarily engaged in the performance of investigative work. On November 22, 2002, Behm's actions did not go beyond these defined boundaries. That night, she did not arrest Holloway or assist Officer Bennett in making the arrest. Indeed, Bennet had to inform Behm of the reason for Holloway's arrest. Behm merely assisted Bennett in shepherding Holloway across the gaming floor, and later watched her in the Gaming Commission office, as Bennett obtained witness statements. See Lindsey, 484 F.3d at 831 (finding no state action where casino's unlicensed security guards detained seven plaintiffs for collecting abandoned tokens). Considering all the circumstances, Behm was not acting as a police officer on November 22, 2002; she was no substitute for the police, and therefore, not a state actor. See Johnson v. LaRabida Children's Hosp., 372 F.3d 894, 897 (7th Cir. 2004) (finding no state action where private security guard was not, among other things, authorized to carry a firearm); Josey v. Filene's Inc., 187 F. Supp. 2d 9, 17 (D. Conn. 2002) (finding no state action where private security guard was not, among other things, authorized to make arrests).

**Willful Participant in Joint Activity**

Private parties are liable under § 1983, only if they have been jointly engaged with public officers in the denial of civil rights.

Young v. Harrison, 284 F.3d 863, 870 (8th Cir. 2002) (per curiam). To make this showing, a plaintiff must "offer evidence sufficient to support the conclusion that the defendants 'directed themselves toward an unconstitutional action by virtue of a mutual understanding,' and provide facts which would establish a 'meeting of the minds.'" DuBose v. Kelly, 187 F.3d 999, 1003 (8th Cir. 1999) (quoting White v. Walsh, 649 F.2d 560, 561 (8th Cir. 1981)). For example, a company and its employees may be acting jointly with police, if the police detain accused individuals without conducting an independent investigation, or detain individuals according to a customary plan with the company. See Murray v. Wal-Mart, Inc., 874 F.2d 555, 558-59 (8th Cir. 1989). However, a private party "does not conspire with a state official merely by invoking an exercise of the state official's authority." Young, 284 F.3d 870.

Holloway has not offered sufficient evidence to support the conclusion that Behm and Bennett jointly conspired to deprive her of her constitutional rights. Behm was not present during Holloway's arrest. More to the point, she was completely unaware of the circumstances supporting the arrest. When Behm met up with Bennett, Bennett needed to inform Behm of the reason he had arrested Holloway. (Doc. 150, Ex. E at 7; Behm depo. at 126-27.) After meeting up, Behm never touched Holloway. (Doc. 150, Ex. A at 24-25; Holloway depo. at 143-44.) In fact, Holloway testified that Behm was the one who instructed Bennett to remove the handcuffs that were hurting her. (Id.) For his part, Officer Bennett conducted an independent investigation, interviewing witnesses and pulling the surveillance tapes. Under the circumstances, Holloway has not presented sufficient evidence that Behm and Bennett had a "meeting of the minds with regard to violating [her] constitutional rights." See Young, 284 F.3d at 870. There is insufficient evidence to allow a rational factfinder to conclude that Behm's conduct was the product of concerted action, "'tantamount to substituting the judgment of a private party for that of the police or allowing the private party to exercise state power.'" Id. (quoting Alexis v. McDonald's Rests. of Mass., 67 F.3d 341, 352 (1st Cir. 1995)).

**Pervasive Entwinement**

The entwinement doctrine provides that acts performed by a private entity may constitute state action if there is "pervasive entwinement" between the private entity and the government. <u>Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n</u>, 531 U.S. 288, 299 (2001). This doctrine is inapplicable to the actions of Officer Behm.

Since Officer Behm cannot be considered a state actor under any of these three theories, summary judgment is granted on Count XI.

### VII. CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that the motion of defendant James A. Bennett for partial summary judgment (Doc. 146) is sustained. Count IV and Count VI are dismissed with prejudice. Count II and Count IX shall proceed to trial.

**IT IS FURTHER ORDERED** that the motion of defendants Ameristar Casino St. Charles, Inc. and Mercile Behm for summary judgment (Doc. 148) is sustained. Count I, Count III, Count V, Count VII, and Count XI are dismissed with prejudice. The claims against Ameristar Casino St. Charles, Inc. and Mercile Behm are terminated.

                                           /S/   David D. Noce
                                      **UNITED STATES MAGISTRATE JUDGE**

Signed on January 12, 2010.